**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (Dayton)**

| | | |
|---|---|---|
| HOWARD TRAVIS | ) | CASE NO. 3:21-cv-146 |
| 402 Flora Ave. | ) | |
| New Carlisle, OH 45344 | ) | JUDGE: Thomas M. Rose |
|       Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| J. RETTENMAIER USA LP | ) | |
| 1228 Muzzy Rd. | ) | |
| Urbana, Ohio 43078-9685 | ) | |
| | ) | **FIRST AMENDED** |
| **Serve Also:** | ) | **COMPLAINT FOR DAMAGES** |
| J. Rettenmaier USA LP | ) | **AND INJUNCTIVE RELIEF** |
| c/o Corp. Service Co. (Stat. Agent) | ) | |
| 50 West Broad St., Suite 1330 | ) | **JURY DEMAND ENDORSED** |
| Columbus, Ohio 43215 | ) | **HEREIN** |
| | ) | |
| **-and-** | ) | |
| | ) | |
| FRANK BLENMAN | ) | |
| c/o J. Rettenmaier USA LP | ) | |
| 1228 Muzzy Rd. | ) | |
| Urbana, Ohio 43078-9685 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| HAROLD FARMER | ) | |
| c/o J. Rettenmaier USA LP | ) | |
| 1228 Muzzy Rd. | ) | |
| Urbana, Ohio 43078-9685 | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| LISA BURTON | ) | |
| c/o J. Rettenmaier USA LP | ) | |
| 1228 Muzzy Rd. | ) | |
| Urbana, Ohio 43078-9685 | ) | |
| | ) | |
|       Defendants. | ) | |
| | ) | |

Plaintiff HOWARD TRAVIS by and through undersigned counsel, as his First Amended Complaint against the Defendants, states and avers the following:

## PARTIES, JURISDICTION, & VENUE

1. Travis is a resident of the city of New Carlisle, Clark County, state of Ohio.

2. Defendant J. RETTENMAIER USA LP ("Rettenmaier") is foreign company that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was at Rettenmaier's location at 1228 Muzzy Rd., Urbana, Ohio 43078-9685.

3. Rettenmaier is, and was at all times hereinafter mentioned, Travis' employer within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S. Code § 634 *et seq*., the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964, U.S. Code, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 *et seq*., R.C. § 4113 *et seq*., R.C. § 4123 *et seq*., and R.C. § 4112 *et seq.*

4. Upon information and belief, Defendants FRANK BLENMAN, HAROLD FARMER, and LISA BURTON are residents of Ohio.

5. Defendants Blenman, Farmer, and Burton are, and were at all times hereinafter mentioned, owners, managers, supervisors, and/or agents of Rettenmaier, and as such, are employers within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S. Code § 634 *et seq*., the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964, U.S. Code, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), R.C. § 4111 *et seq*., R.C. § 4101 et seq., and the FMLA.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Travis is alleging federal law claims under the ADEA, the ADA, Title VII, and FMLA.

7. This Court has supplemental jurisdiction over Travis's state law claims pursuant to 28 U.S.C. § 1367, as Travis's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article II of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## FACTS

9. Travis is a former employee of Defendant.

10. At all times noted herein, Travis was qualified for his position with Defendant and could fully perform the essential functions of his job, with or without a reasonable accommodation.

11. Travis is age 54, and thus is in a protected class for his age.

12. Travis is a Pentecostal Christian, and thus is in a protected class for his religious beliefs.

13. Travis is disabled due to his long-term injuries from his COVID-19 diagnosis (*infra*).

14. Travis worked for Rettenmaier, ending as a Material Handler, from February 28, 1989 until Rettenmaier terminated Travis' employment on December 17, 2020.

15. Travis' early employment with Rettenmaier's predecessors was overall extremely positive.

16. Rettenmaier acquired Travis' previous employer in or around 2018.

17. In or around 2018, Rettenmaier plant manager Defendant Blenman did not want to issue Travis a long-sleeved work shirt which Travis stated was necessary for him to wear to adhere to his religious obligations.

18. Blenman told Travis to pay for the work shirt "out of pocket." Disparately, all other employees were issued work shirts without having to buy them individually.

19. Blenman also told Travis he must work overtime on Sundays.

20. Sundays are religious observance days for Travis.

21. Travis refused to work on his religious day of observance and Blenman threatened to terminate Travis' employment for his requested religious accommodation.

22. At the time, there were at least 80 employees who could work in Travis' position, thus allowing him Sundays off was not an undue burden.

23. Defendant Burton (supervisor) told Travis, "everyone works Sundays, you can too."

24. Travis knew that other employees were able to take off certain hours, but the supervisors would not let him.

25. Travis was forced to ask his union and Defendant Farmer, assistant manager, to intervene so that Travis could continue to have such a religious accommodation.

26. After the union and Farmer were involved in securing Travis' religious accommodation, Travis was disciplined three times for various illegitimate performance issues.

27. Travis was written up despite Burton acknowledging that Travis was not responsible for the issues.

28. These adverse actions against Travis were in retaliation for his previous protected complaints of religious discrimination.

29. In or around June 2020, during the COVID-19 pandemic, Travis tested positive for COVID-19 and was unable to return to work. Rettenmaier requested proof of his illness.

30. Travis provided his employer with a letter from the health department to prove that he had tested positive.

31. Farmer and Blenman contacted Travis' doctor and requested a copy of Travis' medical files. They gave their names to the doctor in this process.

32. While Travis was out from work with the illness, Rettenmaier informed Travis he must file short term disability and unemployment.

33. Importantly, Rettenmaier did not inform Travis of his eligibility nor offer to him FMLA leave, thus interfering with his FMLA rights.

34. When Travis returned to work at Rettenmaier on or about July 20, 2020, Blenman said everyone was "freaked out" that Travis returned to work and warned him not to have his face mask off for any reason.

35. Travis notified Blenman that, due to lung scarring from his illness, he must lower his face mask sometimes. This was additional notice of his protected disability class to Rettenmaier.

36. Blenman continued to single out Travis about lowering his mask despite many other employees lowering their masks and never being reprimanded.

37. In response to Blenman's derision regarding Travis' accommodation request for his lung scarring, Travis told Blenman he felt mistreated and threatened at work and asked Blenman to address it. Blenman failed to address Travis' complaint.

38. In fact, when Travis entered the break room, employee Gavin Gist yelled out, "He's got COVID, get out!"

39. Travis also pointed out to Blenman that no one in the office wore a mask, and the production people wore their masks lowered on their chins.

40. This was a protected complaint of unsafe working conditions caused by his coworkers' failures to follow proper COVID-19 safety protocols.

41. The following day, Travis noticed when he entered a room at work, all conversation ceased. The employees were not wearing their masks.

42. Travis filed a complaint with OSHA and the Clark County Health Department about Rettenmaier's COVID-19 protocol failures.

43. This was both a protected whistleblower complaint and complaint of unsafe working conditions.

44. On September 23, 2020, Travis worked a shift with Michael Warren.

45. Travis told Warren to shut down and complete a task while he took a medical break.

46. The task took Warren 90 minutes when it should have taken only ten.

47. When Travis left his shift that day, Blenman asked why Warren's shut down lasted so long.

48. According to Warren, Travis refused to assist with the needed repairs even though Travis was on a break at the time.

49. Travis informed Blenman that Warren was responsible for the shutdown tasks while Travis took a medical break.

50. To complicate the issue further, Travis believes that Warren took a break as well in order to lengthen the period of shut down.

51. Travis was not a supervisor and was not responsible for Warren's work or timing.

52. On October 6, 2020, OSHA visited Rettenmaier to investigate the allegations filed by Travis and other employees.

53. Travis was placed on a retaliatory, unpaid suspension on October 8, 2020 while Michael was not disciplined.

54. Travis filed a grievance with his union on October 15, 2020.

55. On December 17, 2020, Travis' employment was unlawfully terminated by Rettenmaier in what Rettenmaier falsely designated as a resignation. Travis denies that he resigned.

56. Through Travis' employment under Rettenmaier, he was repeatedly told that he was getting too "old" and "slow" for his role. This showed consistent discrimination against his age.

57. Travis' doctor diagnosed him with lung scarring, a result of his COVID-19 illness. Travis was disabled as a result.

58. In the alternative, Rettenmaier perceived Travis as being disabled for having COVID-19.

59. Travis received a disability accommodation for wearing his mask and taking breaks, yet was targeted by his manager Blenman for constant warnings about mask wearing.

60. When Travis took a break from his shift for medical purposes, (notably, one of his work restrictions and reasonable accommodations), Blenman again targeted Travis for discipline.

61. Travis was disciplined for taking a break - he was suspended without pay while the other employee responsible during Travis' break was disparately not disciplined.

62. Travis' initial attempts to take leave from work were met with resistance.

63. Travis' employer demanded proof Travis was ill, contacted Travis' doctor, requested copies of Travis' medical files, and interfered with and discouraged him from using FMLA leave.

64. Rettenmaier told Travis to file for short term disability and unemployment instead of notifying him of his eligibility to take FMLA leave.

65. FMLA regulations require Rettenmaier to liberally extend all FMLA provisions to Travis.

66. Rettenmaier ignored the regulations and willfully did not offer Travis FMLA leave, thus interfering with his FMLA rights.

67. Rettenmaier started conveniently finding and/or creating a basis to terminate Travis' employment almost immediately after he reported what reasonably appeared to be unlawful and unsafe activities by Rettenmaier.

68. Travis reported health and safety concerns to his manager, Blenman.

69. When those concerns were not resolved, Travis filed a complaint with OSHA and the county department of health.

70. OSHA visited the workplace on October 6, 2020 and on October 8, 2020, Travis was placed on unpaid suspension in retaliation.

71. The suspension was purportedly based upon the length of a shutdown caused by Warren's failure to work while Travis took a medical break during shift. Warren was not disciplined.

72. Through all the previous iterations of the company and its owners and managers, Travis never experienced religious discrimination like he did when Rettenmaier created a hostile work environment based upon Travis' religious beliefs and practices.

73. When Rettenmaier began its control of Travis' employment, it placed him in an impossible quandary: submit to and accept constant unlawful discriminatory practices, or risk losing his job.

74. From the first interaction with Rettenmaier management, Travis was told his religious obligation to dress modestly by wearing long-sleeved shirts would cost him money from "his own pocket" when all other employees were issued Rettenmaier-funded work shirts.

75. Rettenmaier treated Travis disparately based upon his religion by refusing to fund the purchase of his work shirts when they funded the work shirts of the other employees.

76. The religious discrimination suffered by Travis did not cease after his union assisted him with his work shirt issue.

8

77. Rettenmaier continued its deliberate discrimination against him when Rettenmaier managers threatened to terminate Travis' employment for requesting a reasonable accommodation to observe his religious day of observation.

78. Other employees were able to take off certain hours without the threat of termination. More than 80 employees were able to perform Travis' duties in his stead.

79. Rettenmaier through its managers, told Travis that, if he did not work on Sundays, his employment would be terminated. Again, Travis was forced into a choice between his religion and his job.

80. Travis made repeated complaints of discrimination based both on his religion and disability through the end of his employment.

81. Rather than rectifying these issues, Rettenmaier chose to fire him in retaliation instead.

82. Travis made repeated complaints of unsafe working conditions caused by his coworkers' failures to follow COVID protocols.

83. Rather than dealing with those issue, Rettenmaier terminated Travis' employment in retaliation.

84. In late November 2019, Travis filed a Worker's Compensation claim due to an injury he suffered in the workplace.

85. After that point, and particularly after Rettenmaier acquired his previous employer, the company began treating him poorly in retaliation against that protected claim.

86. Defendants' termination of Travis' employment was an adverse employment action against him.

87. Defendant's purported reason(s) for Travis' termination was pretextual.

88. Defendant actually terminated Travis' employment discriminatorily against his disabilities, his religion, his age, to avoid providing a reasonable accommodation, in retaliation against his whistleblowing and safety complaints, to interfere with his FMLA rights, and/or in retaliation against his protected complaints.

89. As a result of the above, Travis has suffered damages.

### COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

90. Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. Travis is 54 years old, and thus is in a protected class for his age.

92. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

93. Defendants treated Travis differently than other similarly situated employees based upon his age.

94. Defendants' termination of Travis was an adverse employment action against him.

95. Defendants' purported reason(s) for Travis' termination was pretextual.

96. Defendants actually terminated Travis' employment due to his age.

97. Defendants violated R.C. § 4112 et seq. by terminating Travis' employment because of his age.

98. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Travis differently from other similarly situated employees outside his protected class.

99. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Travis' age.

100.     Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Travis' age.

101.     Travis incurred emotional distress damages as a result of Defendants' conduct described herein.

102.     As a direct and proximate result of Defendants' acts and omissions, Travis has suffered and will continue to suffer damages.

## COUNT II: AGE DISCRIMINATION IN VIOLATION OF THE ADEA
### (Defendant Rettenmaier Only)

103.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104.     Travis is in a protected class for his age (discussed *supra*).

105.     The ADEA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

106.     Defendant treated Travis differently than other similarly situated employees based upon his age.

107.     Defendant replaced Travis with someone outside his protected age class, upon information and belief.

108.     Defendant violated the ADEA by treating Travis differently from other similarly situated employees outside his protected class.

109.     Defendant violated the ADEA by applying its employment policies in a disparate manner based on Travis's age.

110.     Defendant violated the ADEA by applying its disciplinary policies in a disparate manner based on Travis's age.

111.     Defendant violated the ADEA by terminating Travis's employment because of his age.

112.     Defendant's termination of Travis's employment was an adverse employment action against him.

113.     Defendant's proffered reason for (or lack thereof) Travis's termination was pretextual.

114.     Defendant violated the ADEA by terminating Travis's employment because of his age.

115.     Travis incurred emotional distress damages as a result of Defendant's conduct described herein.

116.     As a direct and proximate result of Defendant's acts and omissions, Travis has suffered and will continue to suffer damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

117.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118.     Travis is in a protected class for his disabilities (described *supra*).

119.     R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

120.     Defendants treated Travis differently than other similarly situated employees based upon his disability.

121.     Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Travis differently from other similarly situated employees outside his protected class.

122.     Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Travis' disability.

123.     Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Travis' disability.

124.     Travis incurred emotional distress damages as a result of Defendants' conduct described herein.

125.     As a direct and proximate result of Defendants' acts and omissions, Travis has suffered and will continue to suffer damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (Defendant Rettenmaier Only)

126.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

127.     Travis is in a protected class for his disabilities (described *supra*).

128.     Defendant had notice of Travis's disabilities. Alternatively, Defendants perceived Travis as disabled.

129.     The ADA provides that it is unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

130.     Defendants violated the ADA by terminating Travis's employment because of his disability.

131.     Defendants violated the ADA by treating Travis differently from other similarly situated employees outside his protected class.

132.     Defendants violated the ADA by applying its disciplinary policies in a disparate manner based on Travis's disability.

13

133.    Defendant was unwilling to accommodate Travis's disability, and intentionally targeted and discriminated against him because he needed an accommodation.

134.    As a direct and proximate result of Defendant's failure to accommodate Travis's disability, Travis has suffered and will continue to suffer damages.

## COUNT V: FAILURE TO ACCOMMODATE

135.    Travis restates each and every prior paragraph of this complaint, as if it were fully restated herein.

136.    Travis informed Rettenmaier of his disabling condition(s).

137.    Travis requested accommodations from Rettenmaier (including, but not limited to, time off work to deal with his diabetes issues and visit the hospital) to assist with his disabilities.

138.    Travis' requested accommodations were reasonable.

139.    There was an available accommodation that would have been effective and would have not posed an undue hardship to Rettenmaier.

140.    Rettenmaier failed to engage in the interactive process of determining whether Travis needed an accommodation.

141.    Rettenmaier failed to provide an accommodation.

142.    Rettenmaier violated R.C. §4112.02 by failing to engage Travis in the interactive process.

143.    Rettenmaier violated R.C. §4112.02 by failing to provide Travis a reasonable accommodation.

144.    As a direct and proximate result of Rettenmaier's conduct, Travis suffered and will continue to suffer damages.

## COUNT VI: RELIGIOUS DISCRIMINATION IN VIOLATION OF R.C. §4112, et seq.

145.    Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

146.    Travis is Pentecostal Christian, and thus is in a protected class for his religion.

147.    R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's religion.

148.    Defendants treated Travis differently than other similarly situated employees based upon his religion.

149.    Defendants' termination of Travis was an adverse employment action against him.

150.    Defendants' purported reason(s) for Travis' termination was pretextual.

151.    Defendants actually terminated Travis' employment due to his religion.

152.    Defendants violated R.C. § 4112 et seq. by terminating Travis' employment because of his religion.

153.    Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Travis differently from other similarly situated employees outside his protected class.

154.    Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Travis' religion.

155.    Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Travis' religion.

156.    Travis incurred emotional distress damages as a result of Defendants' conduct described herein.

157.    As a direct and proximate result of Defendants' acts and omissions, Travis has suffered and will continue to suffer damages.

## COUNT VII: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII
### (Defendant Rettenmaier Only)

158.    Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159.    Travis is Pentecostal Christian, and thus is in a protected class for his religion.

160.    Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's religion.

161.    Defendants treated Travis differently than other similarly situated employees based upon his religion.

162.    Defendants' termination of Travis was an adverse employment action against him.

163.    Defendants' purported reason(s) for Travis' termination was pretextual.

164.    Defendants actually terminated Travis' employment due to his religion.

165.    Defendants violate Title VII by terminating Travis' employment because of his religion.

166.    Defendants violated Title VII by treating Travis differently from other similarly situated employees outside his protected class.

167.    Defendants violated Title VII by applying its employment policies in a disparate manner based on Travis' religion.

168.    Defendants violated Title VII by applying its disciplinary policies in a disparate manner based on Travis' religion.

169.    Travis incurred emotional distress damages as a result of Defendants' conduct described herein.

170.     As a direct and proximate result of Defendants' acts and omissions, Travis has suffered and will continue to suffer damages.

## COUNT VIII: RETALIATION

171.     Travis restates each and every prior paragraph of this complaint, as if it were fully restated herein.

172.     As a result of the Defendants' discriminatory conduct described above, Travis complained of the discrimination, harassment, and disparate treatment he was experiencing.

173.     Subsequent to Travis' complaints to management about harassment, bullying, and disparate treatment toward him, Defendants took adverse employment actions against Travis, including, but not limited to, terminating his employment.

174.     Defendants' actions were retaliatory in nature based on Travis' opposition to the unlawful discriminatory conduct.

175.     Pursuant to R.C. § 4112 *et seq*., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

176.     As a direct and proximate result of Defendants' retaliatory discrimination against and discharge of Travis, he has suffered and will continue to suffer damages.

## COUNT IX:  UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

177.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

178.     Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

179.     Rettenmaier is a covered employer under the FMLA.

180.     Travis was an employee eligible for FMLA due to his severe health conditions (described *supra*).

181.     During his employment, Travis qualified for and inquired about FMLA leave due to his disabilities.

182.     During his employment with Rettenmaier, Travis was unable to receive FMLA benefits for his disabilities.

183.     Defendants unlawfully interfered with Travis' exercise of his rights under the FMLA in violation of § 105 of the FMLA and § 825.220 of the FMLA regulations.

184.     Defendants' refusal to provide Travis with information pertaining to FMLA leave and/or permit Travis to take FMLA leave violated and interfered with his FMLA rights.

185.     As a direct and proximate result of Defendants' conduct, Travis suffered and will continue to suffer damages.

186.     As a direct and proximate result of Defendants' conduct, Travis is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT X: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52
### (Defendant Rettenmaier Only)

187.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

188.     As set forth above, Travis repeatedly made oral and written reports to Defendant about unethical, unlawful, and/or policy-violating behavior.

189.     Travis repeatedly and consistently reported to Defendant what he reasonably believed to be unethical and/or illegal conduct in the workplace in violation of the law and company policies.

190.     In the alternative, Travis reasonably believed he was reporting unethical and/or illegal behavior, in violation of the law and company policies, that constituted criminal acts that threatened the public's health or safety.

191.     Rettenmaier terminated Travis' employment.

192.     Defendant's purported reason for Travis' termination was pretext.

193.     Defendant retaliated against Travis by terminating his employment based on his complaints regarding this conduct.

194.     Defendant's termination of Travis' employment was in violation of R.C. § 4113.52.

195.     As a direct and proximate result of Defendant's conduct, Travis suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT XI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

196.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

197.     A clear public policy exists and is manifested in Ohio and federal statutes, including Governor DeWine's Stay-At-Home Order, the FFCRA, R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on complaints of unsafe working conditions caused by the COVID-19 pandemic and/or other causes.

198.     Travis repeatedly made reports to Defendants about the unethical, unlawful, and/or policy-violating behavior that was going on there, including, but not limited to, unsafe working conditions caused by unsafe working conditions related to the coronavirus pandemic and other things.

199.     Defendants' termination of Travis' employment jeopardizes these public policies by undermining the authority of Gubernatorial orders, federal relief policies, and state statutes.

200.     Defendants' termination of Travis' employment was motivated by Travis' conduct related to these public policies because of the risk to his and to the public's health.

201.     Defendants' purported reason for Travis' termination was pretextual.

202.     Defendants' termination of Travis jeopardizes these public policies.

203.     Defendants' termination of Travis was motivated by conduct related to these public policies.

204.     Defendants had no overriding business justification for terminating Travis.

205.     As a direct and proximate result of Defendants' conduct, Travis has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT XII: WORKER'S COMPENSATION RETALIATION
### (Defendant Rettenmaier Only)

206.     Travis restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

207.     Rettenmaier refused to replace Travis on the schedule after his Worker's Compensation claim.

208.    Rettenmaier's purported reason for removing Travis from the schedule was pretextual.

209.    Rettenmaier terminated Travis's employment.

210.    Rettenmaier's purported reason for Travis's termination was pretextual.

211.    Rettenmaier actually terminated Travis's employment in retaliation for Travis filing a claim for Worker's Compensation benefits.

212.    After Travis filed for Worker's Compensation benefits, Rettenmaier began retaliating against him.

213.    Because Travis was discharged for filing a claim for Worker's Compensation benefits, Travis is therefore entitled to recover damages from Rettenmaier for its wrongful discharge of him in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

214.    As a direct and proximate result of Rettenmaier's conduct, Travis has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Travis demands from Defendants the following:

a) Issue a permanent injunction:

    i.    Requiring Defendants to abolish discrimination, harassment, and retaliation;

    ii.    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal

responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b)  Issue an order requiring Defendants to expunge Plaintiff's personnel file of all negative documentation;

c)  An award against each Defendants for compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d)  An award of punitive damages against each Defendants in an amount in excess of $25,000;

e)  An award of reasonable attorneys' fees and non-taxable costs for Plaintiff's claims as allowable under law;

f)  An award of the taxable costs of this action; and

g)  An award of such other relief as this Court may deem necessary and proper.


Respectfully submitted,


   /s/ Evan R. McFarland    
Evan R. McFarland (0096953)
Matthew Bruce (0083769)

22

Trial Attorney
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244 x173
Fax:     (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Howard Travis*

## **JURY DEMAND**

Plaintiff Howard Travis demands a trial by jury by the maximum number of jurors permitted.

         /s/ Evan R. McFarland
        Evan R. McFarland (0096953)